Jason D. Boren (#7816)
Quinton J. Stephens (#12675)
Ballard Spahr LLP
201 South Main Street, Suite 800
Salt Lake City, Utah 84111-2221
Telephone: (801) 531-3000
Facsimile: (801) 531-3001
E-mail: borenj@ballardspahr.com
E-mail: stephensq@ballardspahr.com

Attorneys for C7 Data Centers, Inc.

## IN THE THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| **C7 DATA CENTERS, INC., a Utah corporation,** | **COMPLAINT** |
| **Plaintiff,** | **Case No.** |
| v. | **Honorable** |
| **COINTERRA, INC., a Delaware Corporation,** | **Tier 3** |
| **Defendant.** | |

Plaintiff C7 Data Centers, Inc. ("C7"), by and through its undersigned counsel, Ballard

Spahr LLP, hereby complains of Defendant Cointerra, Inc. ("Cointerra") as follows:

### THE PARTIES

1. C7 is a corporation incorporated under the laws of the State of Utah.

2. Cointerra is a corporation organized under the laws of the State of Delaware with

its principal place of business located in Austin, Texas.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to Utah Code Ann. § 78A-5-102(1).

4.     Venue of this action properly lies in this court pursuant to Utah Code Ann. § 78B-3-304 and pursuant to Paragraph 8.12 of the Parties' Master Services Agreement.

5.     The agreement between C7 and Cointerra also provides that the exclusive venue for any judicial action arising out of or relating to the agreement shall be in Salt Lake City, Utah and the parties consent to the jurisdiction of said courts and waive any objection thereto.

## GENERAL ALLEGATIONS

6.     On or about April 9, 2014, C7 and Cointerra entered into a Master Services Agreement – No. CT00040214 (the "Agreement") and an accompanying Statement of Work – No. CT00040114-01 ("SOW") (collectively the Agreement and SOW will be referred to as the "Contract"), copies of which are attached hereto as Exhibits A and B, respectively.

7.     The term of the Contract was 18 months beginning on approximately April 9, 2014 and continuing until approximately October 9, 2015. (Exhibit A at ¶ 7.1.)

8.     Under the Contract, C7 would provide Colocation and Hosting Services as well as Monitoring and Management Services. (Exhibit A at ¶ 1.1.)

9.     More particularly, C7 provides Cointerra cabinet space inside of three separate data centers along with the necessary support of the infrastructure installed therein, including, but not limited to, electricity.

2

10.     Cointerra provides Bitcoin mining solutions for individuals wishing to mine Bitcoin.[1]

11.     The mining of Bitcoin consumes large amounts of power and, as such, Cointerra required massive amounts of electricity be provided by C7 to maintain its operations.

12.     In order to provide services to Cointerra, C7 has requested and obtained power from Rocky Mountain Power at costs exceeding $12,000.00 per day.

13.     In addition, in order to provide services to Cointerra, C7 incurred substantial initial costs and refused services to other potential customers in order to accommodate Cointerra's needs.

14.     Cointerra is aware of the initial costs incurred by C7 and is aware that C7 turned down other potential customers who wanted the same data center space that C7 ultimately provided to Cointerra.

15.     Cointerra also knows that C7 is incurring recurring costs, including electricity costs, to perform its obligations under the Contract.

16.     The Contract requires Cointerra to pay C7 a monthly administration plus any additional expenses, taxes, support and services charges, and/or late fees. (Exhibit A at ¶ 4.0; Exhibit B at ¶ 3.0, Appendix A.)

17.     Specifically, Section 4.1 of the Agreement (Exhibit A) states:

**Fees.** In consideration of the Services, Customer shall pay to C7 the fees and other charges set forth in the Payment Schedule of the applicable SOW.  Payment of these fees and other charges

---

[1] Mining Bitcoin is the process of adding Bitcoin into circulation by compiling recent transactions into blocks and by solving computationally difficult puzzles.

entitles Customer to the Services specified in the applicable SOW. All payments are due within thirty (30) days of Customer's receipt of C7's invoice detailing the Services rendered.

18. Cointerra's latest invoice had current charges of $426,243.30. Of this, $75,862.50 was for cabinets and the remaining $350,380.80 was for electricity.

19. Almost immediately after entering into the Contract, Cointerra fell delinquent, often paying less than the amount required to bring it current.

20. Upon information and belief, Cointerra often had revenue sufficient to make larger payments to C7.

21. Upon information and belief, Cointerra chose to pay C7 less than the amounts due in bad faith, knowing that Cointerra was incurring expenses at or above the amounts it was receiving from Cointerra.

22. As of December 1, 2014, Cointerra's past due balance was approximately $1.4 million.

23. The Agreement also provides that "[a]ny payments paid by [Cointerra] more than ten (10) days after the due date ("late payments") shall be subject to a finance charge of 1% per month until paid in full." (Exhibit A at ¶ 4.4.)

24. Cointerra has failed and/or refused to make the payments required under the Contract.

25. C7 sent notices to Cointerra on a weekly basis notifying it of its past due balance and requesting payment.

26. Despite these notices, Cointerra has failed and /or refused to make the payments required under the Contract.

27.     Cointerra's contract charges continue to accrue on a monthly basis at a rate of over $425,000.00 per month.

28.     The Contract also specifically provides that "[i]n the event of any litigation or arbitration between the Parties relating to this Agreement or the Services or Resources, the prevailing Party shall be entitled to recover from the other Party all reasonable attorneys' fees and other reasonable costs incurred by the prevailing Party in connection therewith." (Exhibit A at ¶ 8.5.)

29.     The damages suffered by C7 as a consequence of Cointerra's breach, including payments through the end of the Contract, total $5,394,113.92, plus additional expenses, taxes, late fees, interest, attorneys' fees, and/or costs.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

30.     Plaintiff incorporates by reference the allegations above.

31.     The Contract constitutes a valid, binding, and enforceable contract between C7 and Cointerra.

32.     Cointerra has breached the Contract by failing and/or refusing to make the payments to C7 due thereunder.

33.     Cointerra's breach manifests its bad faith as, upon information and belief, Cointerra had the ability to make larger payments but intentionally refrained from doing so knowing that C7 had significant expenses to maintain its services for Cointerra.

34.     As a direct and proximate result of Cointerra's breaches, C7 has suffered, and will continue to suffer, damages in an amount to be determined at trial but no less than

5

$5,394,113.92, plus any additional expenses, taxes, late fees, interest, attorneys' fees, and/or costs.

## SECOND CLAIM FOR RELIEF
(Alternatively – Unjust Enrichment)

35.     Plaintiff incorporates by reference the allegations above.

36.     Cointerra has received, and continues to receive, benefits from C7 which have been uncompensated.

37.     Said benefits are in excess of $1,400,000.00.

38.     Cointerra has had an appreciation and knowledge of these benefits.

39.     It would be unjust for Cointerra to retain such benefits without compensating C7 for the same.

40.     As a direct and proximate result of Cointerra's actions, C7 has suffered, and will continue to suffer, damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff requests the following relief:

A.     A judgment in favor of C7 and against Cointerra in an amount to be determined at trial but no less than $5,394,113.92, plus any additional expenses, taxes, late fees, interest, attorneys' fees, and/or costs; and

B.     Any other relief the Court finds just and equitable.

DATED this 3rd day of December, 2014.

/s/ Jason D. Boren, Esq.
Jason D. Boren, Esq.
Quinton J. Stephens, Esq.
BALLARD SPAHR LLP
Attorneys for C7 Data Centers, Inc.

Plaintiff's Address:

C7 Data Centers, Inc.
357 South 670 West
Suite 100
Lindon, Utah 84042

# Exhibit A

# Exhibit A



**MASTER SERVICES AGREEMENT - No. CT00040214**    **COMPANY NAME - CoinTerra**

This Master Services Agreement ("Agreement") is entered into by and between the following Parties:

| | | | |
|---|---|---|---|
| Customer: | CoinTerra | | C7 Data Centers, Inc. |
| Address: | 11130 Jollyville Road | | 357 South 670 West |
| | Suite 303 | | Suite 100 |
| | Austin, Texas 78759 | | Lindon, Utah  84042 |
| | | | |
| Phone: | 1-512-831-7713 | | 801-822-5300 |
| | | | |
| Fax: | | | 801-822-5301 |

## AGREEMENT

C7 Data Centers, Inc. ("C7") is engaged in the business of providing colocation, hosting and managed services, together with other services as mutually agreed, to others (collectively the "Services," as further defined herein).  The Services enable the Customer to monitor and manage its assets (e.g., applications, databases, servers, routers, IT devices, non-IT devices and/or other networkable assets of Customer) located at C7's data centers, to manage third party services, and to access reliable Internet colocation and hosting services.  Customer hereby engages C7 to perform the Services as fully described in one or more Statements of Work and in accordance with this Agreement.  The Parties agree to the following Terms and Conditions.

## TERMS AND CONDITIONS

**1.0   Services**

**1.1   Summary of Services.**  C7 will provide the Services to Customer as described below and in the applicable SOW(s) (see Section 1.3).  The Services may include one or more of the following:

(a)  Colocation and Hosting Services.  Hosting and administration services for web sites, Internet-based applications, remote storage, and other hosted services and applications, including facilities, "ping, power and pipe" and other customary hosting facilities and services.

(b)  Monitoring and Management.  Infrastructure, services, and tools that enable the Customer to monitor and manage certain "Managed Assets" identified in an applicable SOW.  Customer will access reports and other pertinent information through a web browser.  The applicable SOW will include further descriptions of the Services as required by Customer.  C7 may, at C7's expense and with Customer's prior written approval, replace or use different hardware, computer programs, databases, policies, and means.

**1.2   Other Services.**  C7 may provide other services to Customer if and as such other services are described in an SOW (see Section 1.3).  Other services including but not limited to those listed below shall also be governed by this Agreement as "Services."

| Server Administration | Managed Firewall Services | Network Administration |
|---|---|---|

DocuSign Envelope ID: CFA8CC71-1B48-47FD-9A77-724562CE0F90

*C7 Statement of Work No.* **CT00040214**
*Company Name CoinTerra*

| Network Monitoring | Disaster Recovery | Managed Backup Services |
| Managed Web Services | Virtualization | Managed SAN Services |

1.3 **Statements of Work.** From time to time, the Parties may enter into one or more Statements of Work ("SOWs" or "SOW"). To be binding on the parties, an SOW must be in writing and signed by both parties. Each SOW will be tied to this Agreement.

Any mutually acceptable other terms and conditions may be included by the parties in the SOW. The parties may agree to include other appendices or provisions in the SOW. Each SOW will be governed by the terms and conditions of this Agreement. In the event of a conflict precedence shall first be given to the applicable SOW, then to this Agreement.

1.4 **Services and Resources.** "Services" shall mean the services to be performed by C7 as described in the Section 1.0 SERVICES or elsewhere in the SOW. C7 shall perform the Services for Customer and will use the Resources (see Section 1.5), as applicable, in performing Services.

1.5 **Resources.** "Resources" shall mean the hardware, software, policies, and other resources, if any, identified in Section 1.0 of the SOW. Unless expressly stated otherwise in the SOW, all Resources provided by C7 are owned by C7, and all Resources provided by Customer are owned by Customer. In the case of Resources in the form of software licenses, ownership by C7 means that C7 holds and controls the license granted by the software licensor. If the SOW indicates that certain Resources are to be provided by Customer, then Customer shall provide such Resources to C7 for purposes of the Services. C7 shall be responsible for maintenance of all Resources owned by C7. Unless otherwise stated in the SOW, Customer shall be responsible for maintenance of all Resources not owned by C7. C7's Resources are not dedicated exclusively to the Services or Customer unless expressly indicated in the SOW. Subject to C7's obligation to provide the Services set forth in the Agreement and any SOWs executed hereunder, the parties acknowledge and agree that C7 retains title to all Resources provided by C7 and that Customer may not pledge or grant a security interest in the Resources, or otherwise use the Resources as collateral with respect to any lease, land or other financial relationship. C7 expressly acknowledges and agrees that Customer retains title to all Resources provided by Customer and that C7 may not pledge or grant a security interest in the Resources, or otherwise use the Resources as collateral with respect to any lease, land or other financial relationship. It is understood that the level of Services is based on the assumptions and estimates stated in each SOW. If actual loads, traffic, demands or other circumstances are not within such assumptions and estimates, then additional or changed Resources may be required and an amended SOW pursuant to Section 1.7 below may be required.

1.6 **Justification of Resources and IP Addresses**

C7 reserves the right to request justification of IP address usage from Customer. Possible justification questions and requests could include the following:

- What products and services does your organization provide?
- How many IP addresses are you currently using on your network?
- How many new hosts will you be numbering in the next 12 months?
- Please provide a numbering topology and accounting for the IP addresses in use in your network today.

1.7 **Responsibilities.** If and to the extent that the SOW attributes or assigns any responsibility, task, deliverable or obligation to Customer or a third party, then Customer or the third party shall be responsible for such responsibility, task, deliverable or obligation, not C7. C7's obligations are subject to the performance and delivery of such responsibility, task, deliverable or obligation.

1.8 **SOW Amendments.** If the Parties desire to amend an SOW, they may do so, but only by a written amended SOW signed by both Parties. An amendment may include additions or changes to Services, Resources, payments and/or other provisions. If Customer desires that Services be changed, then Customer will submit a request for such change in the form of a written change order. C7 will respond in writing to Customer within five (5) business days of each submitted change order request either accepting or denying the change order. If the change is accepted by C7, then C7 will prepare an amendment to the SOW specifying the additional fees, charges and expenses resulting from the change order, if any. The amendment will address such additional fees, charges and expenses. Each amendment will only be effective when signed by both Parties.

1.9 **Cooperation.** Each Party shall make promptly available to the other such information, assistance and cooperation as such other Party may reasonably request in performing its obligations under this Agreement; provided that in the event such

DocuSign Envelope ID: CFA8CC71-1B48-47FD-9A77-724562CE0F90

*C7 Statement of Work No.* **CT00040214**
*Company Name CoinTerra*

information is considered to be confidential, such information shall be provided under the protection of C7's standard non-disclosure agreement.

**1.10 Contact Persons and Notices.** See Section 4.0 of the SOW.

**1.11 Time Schedules.** TIME IS OF THE ESSENCE TO THIS AGREEMENT AND EACH SOW.

**1.12 Nature of Agreement.** Customer acknowledges that this is a services agreement, not a lease of real property.

**2.0 Third Party Software**

Third party software will be operated and used by C7 to enable and facilitate the performance of Services.

**3.0 Maintenance**

**3.1 Maintenance.** C7 shall be responsible for maintenance of its facilities and infrastructure, and Customer shall reasonably cooperate therewith. All decisions concerning maintenance window notifications shall be made in coordination with Customer.

**3.2 Support.** Any support by C7 of Customer shall be described in the applicable SOW and shall be considered Services.

**4.0 Payments**

**4.1 Fees.** In consideration of the Services, Customer shall pay to C7 the fees and other charges set forth in the Payment Schedule of the applicable SOW. Payment of these fees and other charges entitles Customer to the Services specified in the applicable SOW. All payments are due within thirty (30) days of Customer's receipt of C7's invoice detailing the Services rendered.

**4.2 Expenses.** In addition to these fees and other charges, Customer shall reimburse C7 for reasonable and necessary costs and expenses (including any travel, lodging and meals) incurred by C7 in its performance of the Services at Customer's request. Any such expenses must be approved by Customer in advance, in writing.

**4.3 Taxes.** C7 and Customer will be responsible for payment of any sales, use and other taxes or government assessments or duties that apply to their respective companies as required by law.

**4.4 Late Payments.** Any payments paid by Customer more than ten (10) days after the due date ("late payments") shall be subject to a finance charge of 1% per month until paid in full. However, the finance charge shall not exceed the maximum rate or amount, if any, allowed by applicable law.

**5.0 Unauthorized Access and Non-Solicitation**

**5.1 Unauthorized Access and Improper Purposes.** Refer to www.c7dc.com, C7's home page. At the bottom of the web page is a link, "ACCEPTABLE USE POLICY," which accesses a document outlining our policy.

**5.2 Non-solicitation.** During the term of this Agreement and for a period of one (1) year after termination, neither Party shall solicit the employment of any employee of the other Party or knowingly induce any employee, independent contractor or consultant of the other party to terminate or breach an employment, contractual or other relationship with the other Party. This Section 5.2 does not prohibit a Party from hiring the other Party's employee if the other Party's employee first initiated discussions concerning employment. This Section 5.2 does not prohibit any general solicitation of employment or services in newspapers or other publications, on the Internet, or otherwise, where such general solicitation is not specifically directed at the other Party's employees.

**6.0 Indemnities, Warranty and Disclaimers**

**6.1 Intellectual Property Indemnification.** In the event that any Services infringe any patent, copyright, trade secret or trademark or any other intellectual property right of a third party not affiliated with Customer and such third party asserts a claim of such infringement against Customer, then C7 shall indemnify, defend and hold Customer harmless from and against such claim, and shall pay any damages, including without limitation Customer's reasonable attorneys' fees and

DocuSign Envelope ID: CFA8CC71-1B48-47FD-9A77-724562CE0F90

*C7 Statement of Work No.* **CT00040214**
*Company Name CoinTerra*

litigation costs, and shall pay any settlement of such claim, provided that: (i) Customer promptly gives notice to C7 of such claim, (ii) Customer allows C7 to control the defense and settlement of such claim, provided that Customer may, with its own counsel and at its own expense, participate in defense of the claim and (iii) Customer fully cooperates with C7 in connection with the defense and settlement of such claim, all at C7's expenses. C7 shall not be obligated or liable for any infringement based upon or caused by: (a) anything provided by Customer, or (b), any specifications, instructions or requirements provided directly by Customer, or (c) the laws of any country or jurisdiction other than the United States of America or its states.

6.2  **Services Warranty.** C7 represents and warrants that C7 is free to enter into this Agreement and that C7 is under no disability, restriction, or prohibition that will interfere in any manner with C7's full compliance with and performance under this Agreement. C7 warrants that Services will be of good quality and to the reasonable satisfaction of Customer. C7 also warrants and represents that no Services provided to the Customer hereunder will infringe or violate any right of any person or firm and that Customer may exploit such Services provided hereunder without liability or obligation to any person or firm.

6.3  **Disclaimer.** C7 MAKES NO WARRANTIES, REPRESENTATIONS OR PROMISES NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. C7 DISCLAIMS AND EXCLUDES ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.

6.4  **Limitation on Liability.** EXCEPT WITH RESPECT TO LIABILITY FOR INFRINGEMENT OF INTELLECTUAL PROPERTY, BREACH, OR A FAILURE OF THE FACILITY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY (REGARDLESS OF THE FORM OF ACTION OR THE CLAIM E.G. CONTRACT, WARRANTY, TORT, MALPRACTICE AND/OR OTHERWISE) FOR INDIRECT, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES OR FOR ANY LOSS OF REVENUE, PROFITS BUSINESS OPPORTUNITIES, OR FOR ANY FAILURE TO REALIZE SAVINGS OR OTHER BENEFITS, EVEN IF ADVISED OF THE POSSIBILITY OF ANY OF THE FOREGOING. EXCEPT FOR INDEMNIFICATION OBLIGATIONS HEREUNDER OR A FAILURE OF THE FACILITY, THE AGGREGATE LIABILITY OF EITHER PARTY RELATING TO OR ARISING FROM AN SOW AND FOR ANY AND ALL CAUSES OF ACTION ARISING UNDER THIS AGREEMENT OR ANY SOW SHALL NOT EXCEED THE AMOUNT OF FEES ACTUALLY PAID BY CUSTOMER TO C7 UNDER THE APPLICABLE SOW. C7 IS NOT RESPONSIBLE FOR LOSS OF USE OF ANY WEB SITE, INTERNET ACCESS, HARDWARE OR SOFTWARE, LOSS OF DATA, COSTS OF RE-CREATING LOST DATA, THE COST OF ANY SUBSTITUTE PERFORMANCE, EQUIPMENT OR PROGRAM, OR CLAIMS BY ANY PARTY OTHER THAN CUSTOMER, EVEN IF ADVISED OF THE POSSIBILITY THEREOF. THIS AGREEMENT, AND THIS SECTION 6 IN PARTICULAR, DEFINES A MUTUALLY AGREED UPON ALLOCATION OF RISK AND THE FEES AND OTHER CONSIDERATION HAVE BEEN SET TO REFLECT SUCH ALLOCATION. THIS SECTION 6.4 SHALL NOT APPLY TO ANY TORT LIABILITY OF EITHER PARTY BASED ON NEGLIGENCE OR WILLFUL MISCONDUCT RESULTING IN PHYSICAL DAMAGE TO TANGIBLE PROPERTY OR PERSONAL INJURY OR DEATH.

7.0  **Termination**

7.1  **Term, Termination and Renewal.** The term and termination of each SOW shall be as stated in the SOW. Either party may terminate this agreement by providing thirty (30) days written notice of termination to the other party when Services relating to all SOWs are completed and there are no future SOWs. At the end of the term, the SOW will automatically renew unless the Customer provides ninety (90) days written notice to C7 of their desire to terminate the SOW. C7 retains the right to adjust existing SOW fees to percentage increases in the CPI from the date of SOW signing. Any adjustment in SOW fees will be calculated at the time of SOW renewal.

7.2  **Breach.** If either Party breaches an SOW or this Agreement and fails to cure said breach within thirty (30) days after receiving notice of said breach from the nonbreaching Party, then the nonbreaching Party may terminate the SOW and this Agreement as it applies to the terminated SOW. This Section shall not limit the relief, remedies and damages to which the nonbreaching Party may be entitled.

7.3  **Survival.** In the event of any termination or expiration of an SOW or this Agreement, the following shall apply: (a) Sections 4, 5, 6, 7 and 8 and all obligations in connection with the Services or to indemnify or hold harmless shall survive termination and remain in effect; (b) Termination shall not affect or delay any payment under this Agreement which would be payable in the absence of termination; (c) Services shall cease upon termination; and (d) Any and all other proprietary materials or Resources owned or provided by C7 its suppliers or licensors shall be delivered by Customer to C7 in accordance with C7's reasonable instructions and at C7's cost.

DocuSign Envelope ID: CFA8CC71-1B48-47FD-9A77-724562CE0F90

*C7 Statement of Work No.* **CT00040214**
*Company Name CoinTerra*

7.4 **Customer Equipment.** Upon termination of this MSA, Customer shall remove from the data center all Customer Equipment and shall return the space to C7 in the same condition it was provided on the original date of installation, normal wear and tear excepted, pursuant to a time schedule agreed upon by C7 and Customer, or if no schedule is agreed upon, within 10 days after the termination date. Customer shall not be permitted to remove any Customer Equipment or retrieve any stored data unless payment of all monthly Service Fees and other amounts due to C7 are current and not in default. If Customer fails to comply with this paragraph, Customer shall be responsible for all damages and costs incurred by C7, and during any period of holdover, and shall also pay C7 monthly Service Fees equal to 200% of the monthly Service Fees in effect immediately preceding such holdover. Customer agrees that C7 shall have a security interest/lien on Customer Equipment and Customer's stored data as security for payment of all monthly Service Fees and other amounts due and payable to C7.

If Customer does not remove the Customer Equipment as required by this MSA, C7 may remove Customer Equipment to a C7 or third party storage area, at Customer's expense. C7 shall not be liable for any loss or damage caused to Customer or its Customer Equipment or other property resulting from such removal and storage. If C7 does not receive payment of all unpaid monthly Service Fees and other amounts due and payable to C7, and the cost of removal and storage within 60 days after the end of the Term, C7 may sell the Customer Equipment at public or private sale. The proceeds of such sale shall be applied to costs and to any amounts owing by Customer to C7, and any damages incurred by C7, and the balance, if any, shall be paid to Customer.

8.0 **General Provisions**

8.1 **Assignment and Successors.** This Agreement is not assignable or transferable without the prior written consent of the non-assigning party, which shall not be unreasonably withheld, except that this Agreement may be assigned or transferred by either party without consent to any third party who acquires substantially all of that party's assets relating to this Agreement. Without limiting the generality of the foregoing, such assignment or transfer may be made by either party in connection with any reorganization, consolidation, acquisition, sale, or merger of or by that party.

8.2 **Governing Law and Forum.** This Agreement shall be governed by the laws of the state of Utah without giving effect to conflict or choice of law principles.

8.3 **Force Majeure.** Neither Party shall be deemed in breach of this Agreement for any failure to perform an obligation where such failure is caused by an Act of God, labor dispute or shortage beyond the control of that Party; provided that such party shall promptly notify the other party of the event and take all reasonable efforts to cure failure caused by the event.

8.4 **Waiver.** Any waiver under this Agreement must be in writing and any waiver of one event shall not be construed as a waiver of subsequent events.

8.5 **Attorneys' Fees.** In the event of any litigation or arbitration between the Parties relating to this Agreement or the Services or Resources, the prevailing Party shall be entitled to recover from the other Party all reasonable attorneys' fees and other reasonable costs incurred by the prevailing Party in connection therewith.

8.6 **Construction.** This Agreement (including each SOW) represents the wording selected by the Parties to define their agreement and no rule of strict construction shall apply against either Party. This Agreement is written in, and shall be governed by, the English language.

8.7 **Government Approvals.** If any special government approvals, permits, licenses, or other authorizations are necessary for C7's performance of the Services, then C7 shall obtain such approvals, permits, licenses, or other authorizations at C7's sole expense.

8.8 **Relationship.** Neither Party is the partner, joint venturer, agent or representative of the other Party. Each Party is an independent contractor. There is no employment relationship between the Parties. Neither Party has the authority to make any representations or warranties or incur any obligations or liabilities on behalf of the other Party. Neither Party shall make any representation to a third party inconsistent with this Section 8.8.

8.9 **Subcontractors.** C7 may subcontract Services or responsibilities to subcontractors, but this shall not excuse C7 from its obligations (i) to be the single point of contact for the Services and (ii) to ensure that the Services and C7's responsibilities are performed in accordance with this Agreement.

*C7 Statement of Work No.* **CT00040214**
*Company Name CoinTerra*

〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰

8.10  **Entire Agreement.**  This Agreement (which includes each applicable SOW): (i) represents the entire agreement between the Parties relating to the subject matter of this Agreement, (ii) supersedes all prior purchase orders, agreements, understandings, representations and warranties applicable to the subject matter of this Agreement, and (iii) may only be amended, canceled or rescinded by a writing signed by both Parties.  Any terms or conditions of any purchase order or other document submitted by Customer in connection with any Services, which are in addition to, different from or inconsistent with the terms and conditions of this Agreement are not binding on C7 and are ineffective.

8.11  **Execution.**  The persons signing below represent that they are duly authorized to execute this Agreement for and on behalf of the Party for whom they are signing.

8.12  **Jurisdiction and Venue.**  The exclusive venue for any judicial action arising out of or relating to this Agreement shall be the state or federal courts located in Salt Lake City, Utah, and the parties hereby consent to the jurisdiction of said courts and waive any objection that venue in such courts is inconvenient.

8.13  **Customer Name and Logo Usage.**  Customer grants C7 the right to list Customer's name and logo on C7's website and to place a hyperlink on C7's website to Customer's website (if Customer has a website) and to provide Customer's name to potential clients of C7 for the purpose of reference.

Agreed to and accepted by:

AUTHORIZED SIGNATURES

| Customer | CoinTerra | C7 Data Centers | |
|---|---|---|---|
| Name: | *[signature]* | Name: | *DocuSigned by:* Wes Swenson  3BE25E09180448C... |
| Print Name: | RAVI IYENGAR | Print Name: | Wes Swenson |
| Title: | CEO | Title: | CEO |
| Date: | 04/09/2014 | Date: | 04/09/2014 |

092420Z   Confidential   Page 6

# Exhibit B

# Exhibit B

DocuSign Envelope ID: 30DD8FA4-A158-4073-8D84-67D326E7222D



**STATEMENT OF WORK - No. CT00040114-01**          **COMPANY NAME – CoinTerra**

This Statement of Work ("SOW") is entered into by and between Cointerra ("Customer") and C7 Data Centers, Inc. ("C7"). In the event of any conflict between this SOW and the C7 Master Service Agreement, this SOW shall govern.

**Installation Site:**

| | | | |
|---|---|---|---|
| **Timpanogos** \_\_\_\_ | **City Creek** \_\_\_\_ | **Granite Point 1** \_\_\_ | **Granite Point 2** \_\_\_\_ |
| C7 Data Centers, Inc. | C7 Data Centers, Inc. | C7 Data Centers, Inc. | C7 Data Centers, Inc. |
| 357 South 670 West | 179 E Social Hall Ave. | 14944 Pony Express Drive | 14944 Pony Express Drive |
| Suite 100 | Suite 200 | Bluffdale, UT 84065 | Bluffdale, UT 84065 |
| Lindon, UT 84042 | Salt Lake City, UT 84111 | | |

## 1.0 Services

### 1.1 Hardware and Software

**a.** C7 is responsible for supplying space for 50 of cabinets in the C7 Data Center of C7's choice.

**b.** Customer is responsible for supplying any and all hardware and software that may be required to configure and certify this system ready for production unless otherwise specified by Customer. By providing these licenses, Customer certifies it is legally compliant with all licensing terms required by each software vendor.

### 1.2 Internet

**a.** C7 will provide Customer with 300 Mbps redundant bandwidth (Committed Bandwidth) with burstable capacity to 900 Mbps for the Customer's environment. Measurements are taken once every minute on both inbound and outbound traffic and graphed over a month's time period. The inbound and outbound traffic patterns are compared and the lesser of the two discarded. The top five percent of volume usage on the throughput in the remaining traffic flow is then discarded leaving 95% of the traffic flow remaining. *The next highest measurement becomes the billable utilization for the entire month.* Any overages from the base commit rate are billed to the customer at the base commit rate per Mbps as listed in this SOW. If the Customer consistently exceeds their Committed Bandwidth, C7 will request the Customer to increase the amount of Committed Bandwidth purchased under this SOW.

**b.** Customer will initially be provided with /28 - 16 IP address/licenses.

### 1.3 Service Level Agreement

C7 has provided this Service Level Agreement (SLA) to guarantee the performance and availability of your solution. Through built-in redundancy at all levels and proactive monitoring C7 strives for 100% availability.

**a. Exclusions**
- Issues associated with non-certified Customer provided hardware, software and other equipment; Issues associated with Customer provided or Customer leased local area networks or ISP connections.
- Use of unapproved or modified hardware or software.
- Issues arising from the use of the solution by the Customer, its employees, agents, or contractors, in ways not agreed upon in this document.
- Repair times coordinated in advance between C7 and the Customer.
- Scheduled maintenance times.

**b. Uptime Guarantee**
C7 strives for "true SLA" which is a goal of 100% availability. C7 achieves this level of compliance through redundant services and the proactive monitoring of the solution.

DocuSign Envelope ID: 30DD8FA4-A158-4073-8D84-67D326E7222D

*C7 Statement of Work No.* **CT00040114-01**

*Company Name CoinTerra*

C7 guarantees a minimum facility availability of 99.99% on a 24x7x365 basis except for scheduled maintenance. Availability will be calculated monthly using the following formula. <u>Actual Minutes of Facility Availability during the month / Total Minutes of Availability during the month x 100 shall equal the Percent of Availability.</u>

Should the monthly availability fall below the agreed to 99.99% for any month, C7 shall credit the customer the equivalent of 1 (one) day of the Monthly Administration Cost (see Section 3.1 of this SOW) for each 1%, or part thereof, of the 99.99% target not met due to a power, cooling or network outage. This SLA is applicable only to items within C7's assumed control and to outages outside scheduled maintenance windows.

c. **A & B Legs of Power**
   C7 highly recommends that our customers purchase and use two A legs and B legs of power to provide redundant power to all of their computer equipment. Customers should utilize no more than .4 or 40% of the given leg's power allowing the leg to fail over and to be fully powered during any maintenance or downtime. During electrical equipment maintenance or upgrade windows, or if we experience a hardware failure somewhere in either leg of power, C7 will not be responsible for downtime for customer equipment if the customer elects not to implement two A legs and two B legs of redundant power. *The C7 SLA guarantees 99.99% uptime for customers who deploy redundancy in both network and power connectivity. The 99.99% SLA does not apply otherwise.*

d. **Response Time Guarantee**
   C7 guarantees the Customer the following response times for Priority 1 requests:

| Mountain Time | Work In Progress |
|---|---|
| Prime Time: Monday thru Friday 8am – 5pm | Within 1 hour |
| Weekend Prime: Saturday, Sunday, National Holidays 8am – 5pm | Within 2 hours |
| Off Prime: 7 days / Week 6pm – 8am | Within 2 hours |

*Priority 1 requests are defined as business outages or devices that are down. Priority 2 requests are defined as anything other than business outages or devices down and will be acknowledged and worked on as soon as possible.*

## 1.4 Reporting Problems

Should the Customer encounter a problem that requires the assistance of a C7 engineer, Customer must contact C7's Network Operations Center (NOC). The NOC is available 24 hours a day, 7 days a week, 365 days a year. The analyst that takes the call will create a help desk ticket for the issue and contact the appropriate C7 staff. Contact with C7 and creation of a ticket can also be done through the C7 Portal available to all Customers via the C7's website.

The Customer can contact C7's NOC by:
- Phone: 1-800-371-6374
- Email: support@c7dc.com
- Use the C7 Help Desk web interface to open a request. http://portal.c7dc.com

When the Customer calls the NOC, an analyst will ask for the following information:
- Name, company name, and contact information
- Priority customer assigns to the event
- Description of the issue

The Customer will receive a request number that can be used to track the issue. To report issues that are not as urgent, the Customer can Email the NOC. To avoid callbacks for information, the Customer should include the information outlined above.

## 1.5 Facilities

a. **Data Centers**
   C7 data center locations house the network infrastructure and feature a fully switched gigabit backbone network, connecting core network devices at gigabit speeds.

DocuSign Envelope ID: 30DD8FA4-A158-4073-8D84-67D326E7222D

*C7 Statement of Work No.* **CT00040114-01**

*Company Name CoinTerra*

b.   **Reliability and Performance**
A constant supply of power is absolutely essential to C7 service operations and is ensured through the use of uninterruptible power sources, DC Batteries, diesel generators, and mobile diesel generators.

c.   **Connectivity**
C7 has Internet connections with multiple carriers through diverse paths. C7 delivers redundant connections to customers using copper (10/100/1000) and fiber (Gigabit and 10Gigabit) links.

d.   **Security**
C7 data centers are provisioned with security systems, including video monitoring systems, man-traps, card-key systems, biometric systems, and a 24x7 team of security officers.

e.   **Environmental Controls**
C7 data centers are equipped with advanced cooling systems and are protected with fire suppression systems.

## 2.0  Resources

### 2.1  Provided By C7

Resources provided to meet the service obligations to Customer may not be used exclusively to deliver the Services. Other hardware and software resources owned or maintained by C7 may also be used to provide the Services. C7 retains title to all Resources it provides; Customer may not pledge or grant a security interest in the Resources, or otherwise use the Resources as collateral with respect to any lease, land or other financial relationship.

- Personnel necessary to complete the scope of services
- Diagram and review of Customer's network connections
- Two 15 minutes remote hands incidents per month. Services include:
  o  Pushing a button, toggling a switch or setting an externally accessible dip-switch
  o  Rebooting or power cycling of equipment and reading off serial numbers on equipment to customer
  o  Providing visual verification (remote eyes) to assist customer's remote troubleshooting efforts
  o  Relaying status of equipment status indicators or typing simple commands on a pre-installed console
  o  Plug in a console port for remote management by customer
  o  Moving or securing a single cable and replacing or verifying connectivity integrity of C7 provided cross-connects
  o  Adding, removing, or verifying a demarcation label
  o  Shipping, receiving, rack and stack services
  NOTE: Services that require a login are not included. Unused minutes do not roll over to the next month.
- 300 Mbps bandwidth burstable to 900 Mbps per Data Center
- 200 Primary (non-redundant) Legs of 208V 30A Utility Power (.8 usage)
- 2 Network Ports per Data Center
- 50 Cabinets in Data Center
- /28 block of 16 IP addresses

### 2.2  Provided By Customer

- Personnel contact information to assist Center for ongoing support
- Materials required to connect to C7

DocuSign Envelope ID: 30DD8FA4-A158-4073-8D84-67D326E7222D

*C7 Statement of Work No.* **CT00040114-01**

*Company Name CoinTerra*

## 3.0 Payment (See Appendix A)

### 3.1 Payment Schedule
- Initial Term:      18 Months
- Setup/Hardware Fees (one-time):      $ Waived
- Monthly Administration Cost      $ 101,486.60

| Amount | Due | Description |
|--------|-----|-------------|
| $ 101,486.60 | upon Signing | Setup Fees, 1st Month |
| $ 101,486.60 | | Subsequent Months |

### 3.2 Contract Term

The contract term shall be 18 months beginning the date of installation at C7. The Customer shall be invoiced on the start date, which will be April 15th or sooner upon customer request.

If a start date is not specified, the Customer will be invoiced 30 days from the signature date at the bottom of this SOW.

### 3.3 Support and Services

Work provided at customers request by C7's support and services team, in addition to the two "remote hands" incidents described above in Section 2.1, will be invoiced to the Customer at the following rates in 15 minute increments: $80.00/hr. – Rack and stack, $125.00/hr. – Systems administration, $185.00/hr. – Engineering.

### 3.4 Monthly Payment Changes

C7 will notify Customer in writing 30 days before any additional recurring charges (other than those listed in Section 3.3 above) are added to the monthly invoice. These charges will require an amendment to the SOW which must be signed by both C7 and Customer.

## 4.0 Contact Information

Each Party shall designate a contact person below. Notices and other communications shall be directed to the other Party's contact person.

**CUSTOMER CONTACT**

| | |
|--|--|
| **Name:** | Ravi Iyengar |
| **Address:** | 11130 Jollyville Road |
| | Austin, Texas 78759 |

| | |
|--|--|
| **Phone:** | 512-831-7713 |
| **Fax:** | |
| **Email:** | ravi@cointerra.com |

**C7 CONTACT**

| | |
|--|--|
| **Name:** | Ron Driggs |
| **Address:** | 357 South 670 West |
| | Suite 100 |
| | Lindon, Utah 84042 |

| | |
|--|--|
| **Phone:** | 801-850-1470 |
| **Fax:** | 801-822-5301 |
| **Email:** | r.driggs@c7dc.com |

DocuSign Envelope ID: 30DD8FA4-A158-4073-8D84-67D326E7222D

*C7 Statement of Work No.* **CT00040114-01**

*Company Name CoinTerra*

AUTHORIZED SIGNATURES:

| Customer | CoinTerra | C7 Data Centers | |
|---|---|---|---|
| Signature: | | Signature: | Wes Swenson |
| Print Name: | RAVI IYENGAR | Print Name: | Wes Swenson |
| Title: | CEO | Title: | CEO |
| Date: | 04/09/2014 | Date: | 04/09/2014 |

*C7 Statement of Work No.* **CT00040114-01**

*Company Name CoinTerra*

## APPENDIX A



DATA CENTERS

X    New Contract

Renewal

| | |
|---|---|
| C7 Data Centers | Customer: Cointerra |
| 357 South 670 West, Suite 100 | Contact: Ravi Iyengar |
| Lindon, Utah 84042 | |
| (800) 371-6374 | |

| City Creek: | Date: | 4/1/2014 |
|---|---|---|
| Granite Pt. I: | Contact: | Aubrey Malcom |
| Granite Pt. II: | Phone #: | 801-822-5328 |
| Timpanogos: | Term: | 18 months |
| | Discount: | 15% |

| Service | Qty | Colocation Service Details | Unit Setup Price | Total Setup Fees | Unit Monthly Fees | Discounted Monthly Fees | Total Monthly Fees |
|---|---|---|---|---|---|---|---|
| Cabinet(s) | 50 | Full Cabinet - Lockable | $650.00 | $32,500.00 | $425.00 | $361.25 | $18,062.50 |
| Power | 200 | Primary Legs of Power 208V 30A (assumes .8 usage) | $550.00 | $110,000.00 | $490.73 | $417.12 | $83,424.10 |
| Bandwidth | 1 | 300 mbps burstable to 900 mbps | $50.00 | $50.00 | $0.00 | $0.00 | $0.00 |
| Network Port(s) | 2 | Includes Redundant Network Connections(s) | $50.00 | $100.00 | $0.00 | $0.00 | $0.00 |
| Static Ip's | 1 | Included /28 block of 16 Ip's     $ | 25.00 | $25.00 | $0.00 | $0.00 | $0.00 |
| Telarus Discount 15 % shownin discounted MRC | | | | | | | |
| | | | | NRC | $0.00 | | $101,486.60 |

**Your Colocation Package Includes:**

| | |
|---|---|
| 24 x 7 x 365 Physical Access to Your Equipment | Tier 2 and 3 Technical Personnel 24 x7 |
| Dedicated Account Manager | Web-based Bandwidth Monitoring and Reporting |
| Remote Hands - 2 each 30 Minute Incidents/Month | Web-based Trouble Ticketing |
| Access to Monitors and Keyboards | Technical Support and Service3 Level Agreement |
| **This offer expires on April 5, 2014** | *C7 agrees to remove up to 10 % OF circuits within 60 days of installation based on actual power usage. |

Confidential | Page 6 | 4/9/2014

DocuSign Envelope ID: 30DD8FA4-A158-4073-8D84-67D326E7222D

*C7 Statement of Work No.* **CT00040114-01**

*Company Name CoinTerra*

∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿∿

## APPENDIX B

### Customer Access List to Data Center

Employee #1: _____

Cell Phone: _____

Email: _____


Employee #2: _____

Cell Phone: _____

Email: _____


Employee #3: _____

Cell Phone: _____

Email: _____


Employee #4: _____

Cell Phone: _____

Email: _____


Employee #5: _____

Cell Phone: _____

Email: _____


Employee #6: _____

Cell Phone: _____

Email: _____


**Note:** *Customers will be provided with badge access for up to three (3) employees. Additional badges may be requested at $200 per badge annually. A maximum of six (6) badges per customer will be allowed. <u>Photo ID required for badge issuance.</u>*

DocuSign Envelope ID: 30DD8FA4-A158-4073-8D84-67D326E7222D

C7 *Statement of Work No.* **CT00040114-01**

*Company Name CoinTerra*

## APPENDIX C

### Additional Customer Requirements

| Customer Requirement | Description |
|---|---|
| Firewall Configuration | |
| Carrier Circuits | |
| BGP | |
| Special Power | |
| Other | |
| | |

DocuSign Envelope ID: 30DD8FA4-A158-4073-8D84-67D326E7222D

*C7 Statement of Work No.* **CT00040114-01**

*Company Name CoinTerra*

| **Pre-Installation Review** | Customer Initial | C7 Initial |
|---|---|---|
| **Cage** | | |
| • Dimensions: _____  Cold aisle dome: _____ | | |
| • Ladder rack: _____ | | |
| • 42U cabinet: _____  48U cabinet: _____ | | |
| • Cabling within cage: _____ | | |
| **Cabinet – 42U** | | |
| • Quantity: _____ | | |
| • Blanking panels installed | | |
| • Customer equipment installed to fit cold aisle/hot aisle configuration | | |
| • Cold aisle doors are to be kept closed | | |
| **Power** | | |
| • Voltage: _____  Amps: _____ | | |
| • Single legs (not to exceed 80% usage): _____ | | |
| • Redundant legs (not to exceed 40% usage): _____ | | |
| • C7 provided rack mounted PDU (110V 20A only): _____ | | |
| • Customer rack mounted PDU: _____ | | |
| **Internet** | | |
| • Mbps: _____  Burst rate: _____ | | |
| • Number of redundant network ports: _____ | | |
| • Number of cross connects: _____ | | |
| • Third party provider: _____  LOA: _____ | | |
| • Copper: _____  Fiber: _____  Type of fiber: _____ | | |
| • Number of public IP's required: _____ | | |
| • Customer interface equipment (firewall strongly recommended) | | |
| • Host info for reverse DNS setup | | |
| • Detailed company Information for IP address registration with ARIN | | |
| **Data Center Access** | | |
| • Photos | | |
| • Names | | |
| • Email addresses | | |
| • Phone numbers | | |
| • Access levels | | |
| • **C7's must receive access information one week prior to service start date** | | |
| • **Customer personnel agree to read and keep posted data center rules** | | |
| **Data Center Location** _____ | | |
| **Pre-Installation Meeting Date** _____ | | |
| **Pre- Installation Meeting Attendees** | | |
| • C7: _____ | | |
| • Customer: _____ | | |
| **Service/Billing Start Date** _____ | | |

DocuSign Envelope ID: 30DD8FA4-A158-4073-8D84-67D326E7222D

*C7 Statement of Work No.* **CT00040114-01**

*Company Name CoinTerra*

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## ACH Recurring Payment Authorization Form

Schedule your payment to be automatically deducted from your checking or savings account.
Just complete and sign this form to get started!

### Here's How Recurring Payments Work:
You authorize regularly scheduled charges to your checking or savings account.  You will be charged the amount indicated below each billing period.  A receipt for each payment will be emailed to you and the charge will appear on your bank statement as an "ACH Debit."  You agree that no prior-notification will be provided.

### Please complete the information below:

I _____ authorize C7 Data Centers to Debit my bank account
      (Name)

indicated below on the _____ of each month for payment.
        (Date)

Billing Address _____      Phone# _____

City, State, Zip _____      Email _____

| | |
|---|---|
| Account Type: ☐ Checking   ☐ Savings | |
| Name on Acct _____ | |
| Bank Name _____ | Routing Number  Account Number |
| Account Number _____ | :222222222: :000  111  555" )1027 |
| Bank Routing # _____ | |
| Bank City/State _____ | |

SIGNATURE _____      DATE _____

I understand that this authorization will remain in effect until I cancel it in writing, and I agree to notify C7 Data Centers in writing of any changes in my account information or termination of this authorization at least 15 days prior to the next billing date. If the above noted periodic payment dates fall on a weekend or holiday, I understand that the payment may be executed on the next business day.  I understand that because this is an electronic transaction, these funds may be withdrawn from my account as soon as the above noted periodic transaction dates. In the case of an ACH Transaction being rejected for Non Sufficient Funds (NSF) I understand that C7 Data Centers may at its discretion attempt to process the charge again within 30 days, and agree to an additional charge for each attempt returned NSF which will be initiated as a separate transaction from the authorized recurring payment. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law.  I agree not to dispute this recurring billing with my bank so long as the transactions correspond to the terms indicated in this authorization form.