# EXHIBIT A



**MASTER SERVICES AGREEMENT - No. CT00040214       COMPANY NAME - CoinTerra**

This Master Services Agreement ("Agreement") is entered into by and between the following Parties:

| | | |
|---|---|---|
| Customer: | CoinTerra | C7 Data Centers, Inc. |
| Address: | 11130 Jollyville Road | 357 South 670 West |
| | Suite 303 | Suite 100 |
| | Austin, Texas 78759 | Lindon, Utah  84042 |
| Phone: | 1-512-831-7713 | 801-822-5300 |
| Fax: | | 801-822-5301 |

**AGREEMENT**

C7 Data Centers, Inc. ("C7") is engaged in the business of providing colocation, hosting and managed services, together with other services as mutually agreed, to others (collectively the "Services," as further defined herein).  The Services enable the Customer to monitor and manage its assets (e.g., applications, databases, servers, routers, IT devices, non-IT devices and/or other networkable assets of Customer) located at C7's data centers, to manage third party services, and to access reliable Internet colocation and hosting services.  Customer hereby engages C7 to perform the Services as fully described in one or more Statements of Work and in accordance with this Agreement.  The Parties agree to the following Terms and Conditions.

**TERMS AND CONDITIONS**

**1.0  Services**

    **1.1  Summary of Services.** C7 will provide the Services to Customer as described below and in the applicable SOW(s) (see Section 1.3).  The Services may include one or more of the following:

        (a) <u>Colocation and Hosting Services</u>.  Hosting and administration services for web sites, Internet-based applications, remote storage, and other hosted services and applications, including facilities, "ping, power and pipe" and other customary hosting facilities and services.

        (b) <u>Monitoring and Management</u>. Infrastructure, services, and tools that enable the Customer to monitor and manage certain "Managed Assets" identified in an applicable SOW.  Customer will access reports and other pertinent information through a web browser.  The applicable SOW will include further descriptions of the Services as required by Customer. C7 may, at C7's expense and with Customer's prior written approval, replace or use different hardware, computer programs, databases, policies, and means.

    **1.2  Other Services.** C7 may provide other services to Customer if and as such other services are described in an SOW (see Section 1.3).  Other services including but not limited to those listed below shall also be governed by this Agreement as "Services."

| Server Administration | Managed Firewall Services | Network Administration |
|---|---|---|

DocuSign Envelope ID: CFA8CC71-1B48-475D-9A77-724562CE0F90
Case 2:15-cv-00019-DN   Document 6-1   Filed 01/13/15   PageID.95   Page 3 of 7

C7 Statement of Work No. **CT00040214**
Company Name CoinTerra

| Network Monitoring | Disaster Recovery | Managed Backup Services |
| Managed Web Services | Virtualization | Managed SAN Services |

1.3 **Statements of Work.** From time to time, the Parties may enter into one or more Statements of Work ("SOW's" or "SOW"). To be binding on the parties, an SOW must be in writing and signed by both parties. Each SOW will be tied to this Agreement.

Any mutually acceptable other terms and conditions may be included by the parties in the SOW. The parties may agree to include other appendices or provisions in the SOW. Each SOW will be governed by the terms and conditions of this Agreement. In the event of a conflict precedence shall first be given to the applicable SOW, then to this Agreement.

1.4 **Services and Resources.** "Services" shall mean the services to be performed by C7 as described in the Section 1.0 SERVICES or elsewhere in the SOW. C7 shall perform the Services for Customer and will use the Resources (see Section 1.5), as applicable, in performing Services.

1.5 **Resources.** "Resources" shall mean the hardware, software, policies, and other resources, if any, identified in Section 1.0 of the SOW. Unless expressly stated otherwise in the SOW, all Resources provided by C7 are owned by C7, and all Resources provided by Customer are owned by Customer. In the case of Resources in the form of software licenses, ownership by C7 means that C7 holds and controls the license granted by the software licensor. If the SOW indicates that certain Resources are to be provided by Customer, then Customer shall provide such Resources to C7 for purposes of the Services. C7 shall be responsible for maintenance of all Resources owned by C7. Unless otherwise stated in the SOW, Customer shall be responsible for maintenance of all Resources not owned by C7. C7's Resources are not dedicated exclusively to the Services or Customer unless expressly indicated in the SOW. Subject to C7's obligation to provide the Services set forth in the Agreement and any SOWs executed hereunder, the parties acknowledge and agree that C7 retains title to all Resources provided by C7 and that Customer may not pledge or grant a security interest in the Resources, or otherwise use the Resources as collateral with respect to any lease, land or other financial relationship. C7 expressly acknowledges and agrees that Customer retains title to all Resources provided by Customer and that C7 may not pledge or grant a security interest in the Resources, or otherwise use the Resources as collateral with respect to any lease, land or other financial relationship. It is understood that the level of Services is based on the assumptions and estimates stated in each SOW. If actual loads, traffic, demands or other circumstances are not within such assumptions and estimates, then additional or changed Resources may be required and an amended SOW pursuant to Section 1.7 below may be required.

1.6 **Justification of Resources and IP Addresses**

C7 reserves the right to request justification of IP address usage from Customer. Possible justification questions and requests could include the following:

- What products and services does your organization provide?
- How many IP addresses are you currently using on your network?
- How many new hosts will you be numbering in the next 12 months?
- Please provide a numbering topology and accounting for the IP addresses in use in your network today.

1.7 **Responsibilities.** If and to the extent that the SOW attributes or assigns any responsibility, task, deliverable or obligation to Customer or a third party, then Customer or the third party shall be responsible for such responsibility, task, deliverable or obligation, not C7. C7's obligations are subject to the performance and delivery of such responsibility, task, deliverable or obligation.

1.8 **SOW Amendments.** If the Parties desire to amend an SOW, they may do so, but only by a written amended SOW signed by both Parties. An amendment may include additions or changes to Services, Resources, payments and/or other provisions. If Customer desires that Services be changed, then Customer will submit a request for such change in the form of a written change order. C7 will respond in writing to Customer within five (5) business days of each submitted change order request either accepting or denying the change order. If the change is accepted by C7, then C7 will prepare an amendment to the SOW specifying the additional fees, charges and expenses resulting from the change order, if any. The amendment will address such additional fees, charges and expenses. Each amendment will only be effective when signed by both Parties.

1.9 **Cooperation.** Each Party shall make promptly available to the other such information, assistance and cooperation as such other Party may reasonably request in performing its obligations under this Agreement; provided that in the event such

DocuSign Envelope ID: CFA8CC71-1B48-475D-9A77-724562CF0F90
Case 2:15-cv-00019-DN  Document 6-1  Filed 01/13/15  PageID.96  Page 4 of 7

*C7 Statement of Work No.* **CT00040214**
*Company Name CoinTerra*

information is considered to be confidential, such information shall be provided under the protection of C7's standard non-disclosure agreement.

**1.10 Contact Persons and Notices.** See Section 4.0 of the SOW.

**1.11 Time Schedules.** TIME IS OF THE ESSENCE TO THIS AGREEMENT AND EACH SOW.

**1.12 Nature of Agreement.** Customer acknowledges that this is a services agreement, not a lease of real property.

## 2.0 Third Party Software

Third party software will be operated and used by C7 to enable and facilitate the performance of Services.

## 3.0 Maintenance

**3.1 Maintenance.** C7 shall be responsible for maintenance of its facilities and infrastructure, and Customer shall reasonably cooperate therewith. All decisions concerning maintenance window notifications shall be made in coordination with Customer.

**3.2 Support.** Any support by C7 of Customer shall be described in the applicable SOW and shall be considered Services.

## 4.0 Payments

**4.1 Fees.** In consideration of the Services, Customer shall pay to C7 the fees and other charges set forth in the Payment Schedule of the applicable SOW. Payment of these fees and other charges entitles Customer to the Services specified in the applicable SOW. All payments are due within thirty (30) days of Customer's receipt of C7's invoice detailing the Services rendered.

**4.2 Expenses.** In addition to these fees and other charges, Customer shall reimburse C7 for reasonable and necessary costs and expenses (including any travel, lodging and meals) incurred by C7 in its performance of the Services at Customer's request. Any such expenses must be approved by Customer in advance, in writing.

**4.3 Taxes.** C7 and Customer will be responsible for payment of any sales, use and other taxes or government assessments or duties that apply to their respective companies as required by law.

**4.4 Late Payments.** Any payments paid by Customer more than ten (10) days after the due date ("late payments") shall be subject to a finance charge of 1% per month until paid in full. However, the finance charge shall not exceed the maximum rate or amount, if any, allowed by applicable law.

## 5.0 Unauthorized Access and Non-Solicitation

**5.1 Unauthorized Access and Improper Purposes.** Refer to www.c7dc.com, C7's home page. At the bottom of the web page is a link, "ACCEPTABLE USE POLICY," which accesses a document outlining our policy.

**5.2 Non-solicitation.** During the term of this Agreement and for a period of one (1) year after termination, neither Party shall solicit the employment of any employee of the other Party or knowingly induce any employee, independent contractor or consultant of the other party to terminate or breach an employment, contractual or other relationship with the other Party. This Section 5.2 does not prohibit a Party from hiring the other Party's employee if the other Party's employee first initiated discussions concerning employment. This Section 5.2 does not prohibit any general solicitation of employment or services in newspapers or other publications, on the Internet, or otherwise, where such general solicitation is not specifically directed at the other Party's employees.

## 6.0 Indemnities, Warranty and Disclaimers

**6.1 Intellectual Property Indemnification.** In the event that any Services infringe any patent, copyright, trade secret or trademark or any other intellectual property right of a third party not affiliated with Customer and such third party asserts a claim of such infringement against Customer, then C7 shall indemnify, defend and hold Customer harmless from and against such claim, and shall pay any damages, including without limitation Customer's reasonable attorneys' fees and

DocuSign Envelope ID: CFA8CC71-1B48-475D-9A77-724562CE0F90
Case 2:15-cv-00019-DN   Document 6-1   Filed 01/13/15   PageID.97   Page 5 of 7

C7 Statement of Work No. **CT00040214**
Company Name CoinTerra

litigation costs, and shall pay any settlement of such claim, provided that: (i) Customer promptly gives notice to C7 of such claim, (ii) Customer allows C7 to control the defense and settlement of such claim, provided that Customer may, with its own counsel and at its own expense, participate in defense of the claim and (iii) Customer fully cooperates with C7 in connection with the defense and settlement of such claim, all at C7's expenses. C7 shall not be obligated or liable for any infringement based upon or caused by: (a) anything provided by Customer, or (b), any specifications, instructions or requirements provided directly by Customer, or (c) the laws of any country or jurisdiction other than the United States of America or its states.

6.2 **Services Warranty.** C7 represents and warrants that C7 is free to enter into this Agreement and that C7 is under no disability, restriction, or prohibition that will interfere in any manner with C7's full compliance with and performance under this Agreement. C7 warrants that Services will be of good quality and to the reasonable satisfaction of Customer. C7 also warrants and represents that no Services provided to the Customer hereunder will infringe or violate any right of any person or firm and that Customer may exploit such Services provided hereunder without liability or obligation to any person or firm.

6.3 **Disclaimer.** C7 MAKES NO WARRANTIES, REPRESENTATIONS OR PROMISES NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. C7 DISCLAIMS AND EXCLUDES ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.

6.4 **Limitation on Liability.** EXCEPT WITH RESPECT TO LIABILITY FOR INFRINGEMENT OF INTELLECTUAL PROPERTY, BREACH, OR A FAILURE OF THE FACILITY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY (REGARDLESS OF THE FORM OF ACTION OR THE CLAIM E.G. CONTRACT, WARRANTY, TORT, MALPRACTICE AND/OR OTHERWISE) FOR INDIRECT, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES OR FOR ANY LOSS OF REVENUE, PROFITS BUSINESS OPPORTUNITIES, OR FOR ANY FAILURE TO REALIZE SAVINGS OR OTHER BENEFITS, EVEN IF ADVISED OF THE POSSIBILITY OF ANY OF THE FOREGOING. EXCEPT FOR INDEMNIFICATION OBLIGATIONS HEREUNDER OR A FAILURE OF THE FACILITY, THE AGGREGATE LIABILITY OF EITHER PARTY RELATING TO OR ARISING FROM AN SOW AND FOR ANY AND ALL CAUSES OF ACTION ARISING UNDER THIS AGREEMENT OR ANY SOW SHALL NOT EXCEED THE AMOUNT OF FEES ACTUALLY PAID BY CUSTOMER TO C7 UNDER THE APPLICABLE SOW. C7 IS NOT RESPONSIBLE FOR LOSS OF USE OF ANY WEB SITE, INTERNET ACCESS, HARDWARE OR SOFTWARE, LOSS OF DATA, COSTS OF RE-CREATING LOST DATA, THE COST OF ANY SUBSTITUTE PERFORMANCE, EQUIPMENT OR PROGRAM, OR CLAIMS BY ANY PARTY OTHER THAN CUSTOMER, EVEN IF ADVISED OF THE POSSIBILITY THEREOF. THIS AGREEMENT, AND THIS SECTION 6 IN PARTICULAR, DEFINES A MUTUALLY AGREED UPON ALLOCATION OF RISK AND THE FEES AND OTHER CONSIDERATION HAVE BEEN SET TO REFLECT SUCH ALLOCATION. THIS SECTION 6.4 SHALL NOT APPLY TO ANY TORT LIABILITY OF EITHER PARTY BASED ON NEGLIGENCE OR WILLFUL MISCONDUCT RESULTING IN PHYSICAL DAMAGE TO TANGIBLE PROPERTY OR PERSONAL INJURY OR DEATH.

7.0 Termination

7.1 **Term, Termination and Renewal.** The term and termination of each SOW shall be as stated in the SOW. Either party may terminate this agreement by providing thirty (30) days written notice of termination to the other party when Services relating to all SOWs are completed and there are no future SOWs. At the end of the term, the SOW will automatically renew unless the Customer provides ninety (90) days written notice to C7 of their desire to terminate the SOW. C7 retains the right to adjust existing SOW fees to percentage increases in the CPI from the date of SOW signing. Any adjustment in SOW fees will be calculated at the time of SOW renewal.

7.2 **Breach.** If either Party breaches an SOW or this Agreement and fails to cure said breach within thirty (30) days after receiving notice of said breach from the nonbreaching Party, then the nonbreaching Party may terminate the SOW and this Agreement as it applies to the terminated SOW. This Section shall not limit the relief, remedies and damages to which the nonbreaching Party may be entitled.

7.3 **Survival.** In the event of any termination or expiration of an SOW or this Agreement, the following shall apply: (a) Sections 4, 5, 6, 7 and 8 and all obligations in connection with the Services or to indemnify or hold harmless shall survive termination and remain in effect; (b) Termination shall not affect or delay any payment under this Agreement which would be payable in the absence of termination; (c) Services shall cease upon termination; and (d) Any and all other proprietary materials or Resources owned or provided by C7 or its suppliers or licensors shall be delivered by Customer to C7 in accordance with C7's reasonable instructions and at C7's cost.

DocuSign Envelope ID: CFA8CC71-1B48-475D-9A77-724562CE0F90
Case 2:15-cv-00019-DN   Document 6-1   Filed 01/13/15   PageID.98   Page 6 of 7

*C7 Statement of Work No.* **CT00040214**
*Company Name* CoinTerra

7.4 **Customer Equipment.** Upon termination of this MSA, Customer shall remove from the data center all Customer Equipment and shall return the space to C7 in the same condition it was provided on the original date of installation, normal wear and tear excepted, pursuant to a time schedule agreed upon by C7 and Customer, or if no schedule is agreed upon, within 10 days after the termination date. Customer shall not be permitted to remove any Customer Equipment or retrieve any stored data unless payment of all monthly Service Fees and other amounts due to C7 are current and not in default. If Customer fails to comply with this paragraph, Customer shall be responsible for all damages and costs incurred by C7, and during any period of holdover, and shall also pay C7 monthly Service Fees equal to 200% of the monthly Service Fees in effect immediately preceding such holdover. Customer agrees that C7 shall have a security interest/lien on Customer Equipment and Customer's stored data as security for payment of all monthly Service Fees and other amounts due and payable to C7.

If Customer does not remove the Customer Equipment as required by this MSA, C7 may remove Customer Equipment to a C7 or third party storage area, at Customer's expense. C7 shall not be liable for any loss or damage caused to Customer or its Customer Equipment or other property resulting from such removal and storage. If C7 does not receive payment of all unpaid monthly Service Fees and other amounts due and payable to C7, and the cost of removal and storage within 60 days after the end of the Term, C7 may sell the Customer Equipment at public or private sale. The proceeds of such sale shall be applied to costs and to any amounts owing by Customer to C7, and any damages incurred by C7, and the balance, if any, shall be paid to Customer.

## 8.0 General Provisions

8.1 **Assignment and Successors.** This Agreement is not assignable or transferable without the prior written consent of the non-assigning party, which shall not be unreasonably withheld, except that this Agreement may be assigned or transferred by either party without consent to any third party who acquires substantially all of that party's assets relating to this Agreement. Without limiting the generality of the foregoing, such assignment or transfer may be made by either party in connection with any reorganization, consolidation, acquisition, sale, or merger of or by that party.

8.2 **Governing Law and Forum.** This Agreement shall be governed by the laws of the state of Utah without giving effect to conflict or choice of law principles.

8.3 **Force Majeure.** Neither Party shall be deemed in breach of this Agreement for any failure to perform an obligation where such failure is caused by an Act of God, labor dispute or shortage beyond the control of that Party; provided that such party shall promptly notify the other party of the event and take all reasonable efforts to cure failure caused by the event.

8.4 **Waiver.** Any waiver under this Agreement must be in writing and any waiver of one event shall not be construed as a waiver of subsequent events.

8.5 **Attorneys' Fees.** In the event of any litigation or arbitration between the Parties relating to this Agreement or the Services or Resources, the prevailing Party shall be entitled to recover from the other Party all reasonable attorneys' fees and other reasonable costs incurred by the prevailing Party in connection therewith.

8.6 **Construction.** This Agreement (including each SOW) represents the wording selected by the Parties to define their agreement and no rule of strict construction shall apply against either Party. This Agreement is written in, and shall be governed by, the English language.

8.7 **Government Approvals.** If any special government approvals, permits, licenses, or other authorizations are necessary for C7's performance of the Services, then C7 shall obtain such approvals, permits, licenses, or other authorizations at C7's sole expense.

8.8 **Relationship.** Neither Party is the partner, joint venturer, agent or representative of the other Party. Each Party is an independent contractor. There is no employment relationship between the Parties. Neither Party has the authority to make any representations or warranties or incur any obligations or liabilities on behalf of the other Party. Neither Party shall make any representation to a third party inconsistent with this Section 8.8.

8.9 **Subcontractors.** C7 may subcontract Services or responsibilities to subcontractors, but this shall not excuse C7 from its obligations (i) to be the single point of contact for the Services and (ii) to ensure that the Services and C7's responsibilities are performed in accordance with this Agreement.

DocuSign Envelope ID: CFA8CC71-1B49-475D-9A77-724562CE0F90
Case 2:15-cv-00019-DN   Document 6-1   Filed 01/13/15   PageID.99   Page 7 of 7

C7 Statement of Work No. **CT00040214**
Company Name CoinTerra

8.10 **Entire Agreement.** This Agreement (which includes each applicable SOW): (i) represents the entire agreement between the Parties relating to the subject matter of this Agreement, (ii) supersedes all prior purchase orders, agreements, understandings, representations and warranties applicable to the subject matter of this Agreement, and (iii) may only be amended, canceled or rescinded by a writing signed by both Parties. Any terms or conditions of any purchase order or other document submitted by Customer in connection with any Services, which are in addition to, different from or inconsistent with the terms and conditions of this Agreement are not binding on C7 and are ineffective.

8.11 **Execution.** The persons signing below represent that they are duly authorized to execute this Agreement for and on behalf of the Party for whom they are signing.

8.12 **Jurisdiction and Venue.** The exclusive venue for any judicial action arising out of or relating to this Agreement shall be the state or federal courts located in Salt Lake City, Utah, and the parties hereby consent to the jurisdiction of said courts and waive any objection that venue in such courts is inconvenient.

8.13 **Customer Name and Logo Usage.** ~~Customer grants C7 the right to list Customer's name and logo on C7's website and to place a hyperlink on C7's website to Customer's website (if Customer has a website) and to provide Customer's name to potential clients of C7 for the purpose of reference.~~

Agreed to and accepted by:

**AUTHORIZED SIGNATURES**

| Customer | CoinTerra | C7 Data Centers | |
|---|---|---|---|
| Name: | *[signature]* | Name: | *[DocuSigned signature: Wes Swenson] 3BE25E69180448C...* |
| Print Name: | RAVI IYENGAR | Print Name: | Wes Swenson |
| Title: | CEO | Title: | CEO |
| Date: | 04/09/2014 | Date: | 04/09/2014 |