# EXHIBIT B

Case 2:15-cv-00019-DN   Document 10-2   Filed 08/03/16   PageID.152   Page 2 of 9

15-10109-hcm Doc#68-1 Filed 06/09/15 Entered 06/09/15 15:25:19 Exhibit A - Compromise and Settlement Agreement Pg 1 of 8

## COMPROMISE AND SETTLEMENT AGREEMENT

This Compromise and Settlement Agreement ("**Agreement**") is entered into by and between Randolph N. Osherow, Chapter 7 Trustee for Cointerra, Inc. ("**Cointerra Trustee**") and Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement[1] (hereinafter, in such capacity the "**Collateral Agent**"), Open-Silicon, Inc. ("**OSI**") and C7 Data Centers, Inc. ("**C7**") (each a "**Party**" and collectively the "**Parties**") on this ___ day of June, 2015.

## RECITALS

WHEREAS Cointerra, Inc. ("**Debtor**") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Court on January 24, 2015 (the "**Petition Date**"), in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "**Bankruptcy Court**"), Case No. 15-10109-HCM-7 (the "**Bankruptcy Case**") which created the "**Cointerra Chapter 7 Estate**";

WHEREAS on August 14, 2014, but effective as of August 1, 2014, Collateral Agent, for the ratable benefit of the Lenders, entered into numerous agreements with Debtor, including: a) Collateral Agent Agreement; b) Secured Convertible Note Purchase Agreement; c) Security and Pledge Agreement; d) Intellectual Property Security Agreement; e) Guarantee, Pledge and Security Agreement; and f) Deposit Account Control Agreement, which documents, among other things, granted a security interest in virtually all of the Debtor's asset (collectively, the "**Transaction Documents**");

WHEREAS on August 4, 2014, Collateral Agent filed its UCC-1 with the Delaware Secretary of State, perfecting its security interest in assets of the Debtor as listed the security agreements noted above.  The Deposit Account Control Agreement was executed by and between the Collateral Agent and Bank of America, N.A. and was executed on October 15, 2014;

WHEREAS just prior to the Petition Date, Debtor owed Collateral Agent for the ratable benefit of the Lenders, $4,560,154.66, which was set forth, along with documentation noted above in Collateral Agent's proof of claim #44 filed in the Bankruptcy Case (the "**Lenders' Claim**");

WHEREAS on or about April 9, 2014, C7 and Debtor entered into a Master Services Agreement and the accompanying Statement of Work (collectively the "**Contract**") wherein C7 was to provide colocation and hosting services as well as monitoring and management services to the Debtor.  The Contract, at section 7.4 states that "Customer [Debtor] agrees that C7 shall have a security interest /lien on Customer Equipment and Customer's stored data as security for payment of all Monthly Service Dees and other amounts due and payable to C7." [Insert added].

---

[1] Any capitalized terms not defined herein are as defined in the Cointerra, Inc. Security and Pledge Agreement, the Collateral Agent Agreement and multiple Secured Convertible Notes all dated August 1, 2014.

COMPROMISE AND SETTLEMENT AGREEMENT                                           PAGE 1 OF 6

80820042.2

Case 2:15-cv-00019-DN   Document 10-2   Filed 08/03/16   PageID.153   Page 3 of 9

15-10109-hcm Doc#68-1 Filed 06/09/15 Entered 06/09/15 15:25:19 Exhibit A - Compromise and Settlement Agreement Pg 2 of 8

The Debtor's Bitcoin mining equipment was put into service at C7 locations and put into C7's possession in April of 2014, at the latest;

WHEREAS the Debtor and C7 were in litigation pre-petition in Utah wherein C7 alleges significant sums were due to it for services rendered under the Contract and where the Debtor has asserted a counter claim. C7 filed a proof of claim in the Bankruptcy Case in the amount of $5,394,113.92(the "**C7 Claim**");

WHEREAS the Debtor and OSI entered into that certain ASIC Design and Production Agreement on or about June 17, 2013. The Debtor and OSI were in litigation pre-petition in state court in California wherein OSI asserted, *inter alias*, claims of breach of contract and unjust enrichment. OSI is in possession of unfinished work product ("**OSI WIP**") of de minimus value. OSI filed a general unsecured proof of claim [Claim #77] in the amount of $12,251,141.84 (the "**OSI Claim**");

WHEREAS Collateral Agent filed a Motion for Relief from the Automatic Stay [DKT #28] (the "**CA MLS**") to enable it to proceed to foreclose on its asserted collateral;

WHEREAS objections to the CA MLS were filed by OSI (the "**OSI Objection**") [DKT # 38] and by C7 [DKT # 39]. OSI asserted that the Lenders' Claim automatically converted to equity pursuant to the terms of the Transaction Documents. C7 joined in the objection filed by OSI and also asserted a security interest in certain assets with priority over the security interests and liens asserted by the Collateral Agent;

WHEREAS the Trustee, OSI and C7 agreed to a partial lifting of the automatic stay to address the liquidation of the equipment and other items at the Debtor's office location in Austin, Texas and how to hold the net proceeds after expenses of sale and the Bankruptcy Court entered an order approving that partial lifting of the automatic stay by agreement [DKT #44];

WHEREAS the Collateral Agent disputes the objections raised by OSI and C7, but acknowledges that C7's possession perfected security interest is superior in priority and that C7's rights to the collateral in C7's possession to which the Collateral Agent claims a perfected security interest and an extensive debt (as well as those rights which may exist as to Future Electronics, Inc. ("**FE**"), holder of filed secured proof of claim # 8 as to specific parts acquired by and through FE) has priority over the Collateral Agent's asserted secured claim;

WHEREAS the Cointerra Trustee has reviewed the claims, objections and contentions asserted by OSI, C7 and the Collateral Agent and taking into account the current value of the property of the Cointerra Chapter 7 Estate, the circumstances attendant in the Bitcoin market and the general pace of change and improvements that are present with regard to Bitcoin mining machinery and the extensive time and costs of litigation that will accompany a litigated resolution of these disputes and the attendant costly delay in converting the assets at issue to distributable funds, has determined in the exercise of his business judgment that the hereinafter described resolution is in the best interests of the Cointerra Chapter 7 Estate and its various constituents and that same falls within the reasonable range of probable resolutions that would likely result if litigation were to proceed;

80820042.2

Case 2:15-cv-00019-DN   Document 10-2   Filed 08/03/16   PageID.154   Page 4 of 9

15-10109-hcm Doc#68-1 Filed 06/09/15 Entered 06/09/15 15:25:19 Exhibit A - Compromise and Settlement Agreement Pg 3 of 8

WHEREAS the Cointerra Trustee acknowledges that the points raised by and the work done by OSI in drafting and filing the OSI Objection to the Lenders Claim and CA MLS was initiated by OSI and that the OSI Objection was instrumental in enabling the Cointerra Trustee to secure the benefits set forth in this Agreement.

NOW THEREFORE, in consideration of the recitals, and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

## SETTLEMENT TERMS

1. **Resolution of Disputes, Allowance of Claim of Collateral Agent and Termination of Automatic Stay.** The Collateral Agent's proof of claim #44, upon approval of this Agreement by the Bankruptcy Court, shall be: a) deemed allowed in the amount stated therein ($4,560,154.66) (hereinafter the "**CA's Allowed Claim**"); b) the security interests asserted are deemed to be valid and are only subject to priority assertions by other secured creditors in the case, both those resolved by order of this Court [DKT #27 as to the FEC/ACD PMSI Collateral] and those resolved herein as to C7; and c) the automatic stay as to the disposition of the collateral covered by the security interests held by the Collateral Agent shall be terminated. In exchange for the allowance of the CA's Allowed Claim and determination that the security interests granted are valid and subsisting against the Cointerra Chapter 7 Estate, subject to the priority issues just noted and the termination of the automatic stay, the Collateral Agent, who will retain control over the liquidation and conversion of all such property listed in this section into distributable funds (with input and after consultation with the Trustee), agrees to turnover immediately (but not later than 5 business days after receipt of such distributable funds) to the Cointerra Trustee, for the ratable benefit of unsecured creditors (including holders of allowed administrative claims), the following:

  (a) one third (1/3rd) of the net proceeds from the disposition of property to which the Collateral Agent's security interests, described in the Lenders' Claim, attaches, excluding cash and cash equivalents wherever held ("**Estate Cash**"), that the Cointerra Chapter 7 Estate owns (save and except for what is described in b) below) and to which the Collateral Agent's security interest retains priority (specifically as to FE and C7);

  (b) three quarters (3/4ths) of the net proceeds from the disposition of property described in the Collateral Agent's Intellectual Property Security Agreement, described in the Lenders' Claim, wherever held;

  (c) one fifth (1/5th) of the net proceeds of property as to which the Transaction Documents and Lenders' Claim may remain attached and to which it may have priority that is currently property of the Chapter 11 estate of AQH, LLC, Case No. 15-50553, pending before the Bankruptcy Court for the Northern District of California – San Jose Division; and

  (d) thirty five percent (35%) of Estate Cash.

80820042.2

Case 2:15-cv-00019-DN   Document 10-2   Filed 08/03/16   PageID.155   Page 5 of 9

15-10109-hcm Doc#68-1 Filed 06/09/15 Entered 06/09/15 15:25:19 Exhibit A - Compromise and Settlement Agreement Pg 4 of 8

As to all net proceeds described above, the actual costs, including reasonable attorney's fees and other expenses of the Collateral Agent as are reasonably necessary to liquidate or convert such property to distributable funds in accordance with otherwise applicable law, shall be charged against the gross recovery to which those costs specifically relate from and after the approval of the Agreement. Notwithstanding same, none of Collateral Agent's attorney's fees, costs or expenses shall be charged as against Estate Cash (the $50,000 sum in the Collateral Agent's possession or control being acknowledged to be property of the Cointerra Chapter 7 Estate) (collectively the "**Cointerra Chapter 7 Estate's Retained Property Interest**"). The automatic stay pursuant to section 362 of the Bankruptcy Code shall be lifted to permit the Collateral Agent to liquidate property of the Cointerra Chapter 7 Estate in accordance with this Agreement. The Lenders' Claim shall participate in distributions of whatever kind or nature made to holders of allowed unsecured claims from the Cointerra Chapter 7 Estate, but the Lenders' Claim shall be reduced for purposes of any such distribution to 80% of the amount of the Lenders' Claim after crediting of any net recoveries from any of the four (4) subparts set forth in 1(a)-(d) above.

2.  Resolution of Priority Issues as between the Collateral Agent and C7. The Collateral Agent agrees that the CA's Allowed Claim is inferior in priority as to the property of the Cointerra Chapter 7 Estate that is in C7's possession. To the extent that the proceeds of any liquidation or sale of the collateral in C7's possession is sold, the proceeds of such a sale will be subject to the provisions of 1a) above only to the extent that the proceeds exceed the amount of C7's hereinafter allowed claim. If C7's claim is not paid in full, none of the proceeds of the collateral in C7's possession will be subject to the provisions of 1a) above.

3.  Agreement between the Cointerra Trustee and C7 and OSI to Lift the Automatic Stay as to C7 and OSI's Security Interest. The Cointerra Trustee agrees to the entry of an order lifting of the automatic stay as to property of the Cointerra Chapter 7 Estate in C7's and OSI's possession, to enable C7 and OSI to liquidate or otherwise dispose of such property. C7 shall retain such funds, subject to asserted priority secured claims of FE as to specific property.

4.  Resolution of Disputes and Allowance of Claims of C7. C7 withdraws its objection to the CA MLS consistent with the terms of this Agreement. The C7 Claim shall be compromised and allowed as an under secured claim in the amount of $4,950,000 (the "**C7 Allowed Claim**") after consideration of both the payments made to C7 within 90 days of the Petition Date totaling $100,000 and subsequent new value provided by C7 to the Debtor's benefit in excess of $200,000 made after the date of such payment.

5.  Resolution of Disputes and Allowance of Claims of OSI. OSI withdraws its objections to the CA MLS. The OSI Claim shall be compromised and allowed as a general unsecured claim in the amount of $11,500,000 (the "**OSI Allowed Claim**"). The Parties acknowledge and agree that (a) the OSI incurred expenses after the Petition Date in investigating, preparing, and prosecuting the OSI Objection, and (b) that certain of such expenses were (i) actual and instrumental to the preservation of the Cointerra Chapter 7 Estate and (ii) necessary and instrumental in enabling the Cointerra Trustee to secure the benefits set forth in this Agreement. This Agreement and the settlement of the OSI Allowed Claim is without prejudice to, and OSI reserves the right to, file an administrative-expense claim under sections 507(a)(2) and/or 503(b) of the Bankruptcy Code.



80820042.2

Case 2:15-cv-00019-DN   Document 10-2   Filed 08/03/16   PageID.156   Page 6 of 9

15-10109-hcm Doc#68-1 Filed 06/09/15 Entered 06/09/15 15:25:19 Exhibit A - Compromise and Settlement Agreement Pg 5 of 8

6. **Governing Law and Venue.** To the extent not controlled by federal bankruptcy law, this Agreement shall be governed by and construed according to the laws of the State of Texas except that any conflicts of law rule requiring reference to the laws of another jurisdiction shall be disregarded. The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement, to decide any claims or disputes that may arise or result from, or be connected with the Agreement, or any breach or default of the Agreement, and any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court

5. **Representations and Warranties.** Each Party hereby expressly warrants and represents that: (i) it has authority to act for itself; (ii) it has full power and express authority to settle the claims as set forth in this Agreement; (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Agreement; (iv) it is represented and has been advised by counsel in connection with this Agreement, which such Party executes wholly voluntarily and of its own choice, volition, judgment, belief and knowledge, after consultation with such counsel and not under coercion or duress; (v) it has made its own investigation of the facts and is relying solely upon its own knowledge and the advice of its counsel; (vi) it is unaware of any illegal, unethical, or fraudulent activity or conduct of any Party to this Agreement; and (vi) any Party knowingly waives any claim that this Agreement was induced by any misrepresentation or nondisclosure and any right to rescind or avoid this Agreement based upon presently existing facts either known or reasonably ascertainable. The Parties agree and stipulate that each Party are relying upon these representations and warranties in entering into this Agreement.

6. **Cooperation.** Each Party will use its reasonable best efforts to obtain the outcomes sought by this Agreement, including Court approval. Each Party agrees, represents, and warrants to cooperate fully and to take such steps and to execute such documents as may be reasonably necessary or proper to effectuate the purposes of this Agreement and to preserve its validity and enforceability.

7. **Entire Agreement.** This Agreement contains and constitutes the entire agreement and understandings of the Parties and supersedes as of the execution date all prior negotiations, discussions, undertakings or agreements of any sort whatsoever, whether oral or written, or any claims that might have ever been made by one Party against any opposing Party. There are no representations, agreements, or inducements except as set forth expressly and specifically in this Agreement.

8. **Amendments in Writing.** This Agreement may only be amended or modified by a written instrument that has been executed by the Parties and that unequivocally indicates the Parties' intention to modify this Agreement. No waiver of any breach of this Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Agreement.

9. **No Author.** All terms and provisions of this Agreement, and the drafting of this Agreement, have been negotiated by the Parties at arm's length, with assistance of the attorneys and appropriate representatives of the Parties' choosing, and to mutual agreement, with consideration by and participation of each and no Party shall be deemed the scrivener of this Agreement.

80820042.2

Case 2:15-cv-00019-DN    Document 10-2    Filed 08/03/16    PageID.157    Page 7 of 9

15-10109-hcm Doc#68-1 Filed 06/09/15 Entered 06/09/15 15:25:19 Exhibit A - Compromise and Settlement Agreement Pg 6 of 8

10. **Construction.** Words used in the Agreement of any gender or neuter shall be construed to include any other gender or neuter where appropriate. Words used in this Agreement that are either singular or plural shall be construed to include the other where appropriate. This Agreement shall be construed in the broadest fashion possible so as to fulfill the expressed intention of the Parties, which is to fully and finally resolve all claims or disputes, of whatever nature, existing between them as of the effective date.

11. **Captions and Headings.** The Parties agree that the captions and headings contained in this Agreement are for convenience only and shall not be deemed to constitute a part of this Agreement.

12. **Multiple Counterparts.** This Agreement may be executed in multiple counterparts, any and all of which may contain the signatures of less than all the Parties and all of which shall be construed together as a single document. Each counterpart shall be fully effective as an original when all of the Parties have executed this Agreement. Such counterparts may also be executed by facsimile or electronic signature.

13. **No Waiver.** The failure by any of the Parties to this Agreement to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement or a course of dealing between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

14. **Binding Agreement.** This Agreement shall be binding upon the Parties hereto and each of their respective successors, legal representatives, and assigns upon execution as to the terms stated herein, but performance hereunder will be excused and none of the Parties will have any right to enforce this Agreement until the Bankruptcy Court enters an order approving the Cointerra Trustee entering into this Agreement.

| Randolph N. Osherow, Chapter 7 Trustee for Cointerra, Inc.<br><br>_[signed]_ 6/6/15<br>Randolph Osherow, Trustee | Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement<br><br>By:_____<br>Rick Fink, Managing Director |
|---|---|
| C7 Data Centers, Inc.<br><br>By: _____<br>Weston Swenson,, CEO | Open-Silicon, Inc.<br><br>By: _____<br>Jay Vyas, Sr. VP and CFO |

80820042.2

6

Case 2:15-cv-00019-DN   Document 10-2   Filed 08/03/16   PageID.158   Page 8 of 9

15-10109-hcm  Doc#68-1  Filed 06/09/15  Entered 06/09/15 15:25:19  Exhibit A - Compromise and Settlement Agreement Pg 7 of 8

10. <u>Construction.</u> Words used in the Agreement of any gender or neuter shall be construed to include any other gender or neuter where appropriate. Words used in this Agreement that are either singular or plural shall be construed to include the other where appropriate. This Agreement shall be construed in the broadest fashion possible so as to fulfill the expressed intention of the Parties, which is to fully and finally resolve all claims or disputes, of whatever nature, existing between them as of the effective date.

11. <u>Captions and Headings.</u> The Parties agree that the captions and headings contained in this Agreement are for convenience only and shall not be deemed to constitute a part of this Agreement.

12. <u>Multiple Counterparts.</u> This Agreement may be executed in multiple counterparts, any and all of which may contain the signatures of less than all the Parties and all of which shall be construed together as a single document. Each counterpart shall be fully effective as an original when all of the Parties have executed this Agreement. Such counterparts may also be executed by facsimile or electronic signature.

13. <u>No Waiver.</u> The failure by any of the Parties to this Agreement to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement or a course of dealing between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

14. <u>Binding Agreement.</u> This Agreement shall be binding upon the Parties hereto and each of their respective successors, legal representatives, and assigns upon execution as to the terms stated herein, but performance hereunder will be excused and none of the Parties will have any right to enforce this Agreement until the Bankruptcy Court enters an order approving the Cointerra Trustee entering into this Agreement.

| Randolph N. Osherow, Chapter 7 Trustee for Cointerra, Inc.<br><br>_____<br>Randolph Osherow, Trustee | Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement<br><br>By:_____<br>Rick Fink, Managing Director |
| --- | --- |
| C7 Data Centers, Inc.<br><br>By: _[signature]_<br>Weston Swenson,, CEO | Open-Silicon, Inc.<br><br>By: _[signature]_<br>Jay Vyas, Sr. VP and CFO |

80820042.2

Case 2:15-cv-00019-DN   Document 10-2   Filed 08/03/16   PageID.159   Page 9 of 9

15-10109-hcm  Doc#68-1  Filed 06/09/15  Entered 06/09/15 15:25:19  Exhibit A - Compromise and Settlement Agreement Pg 8 of 8

10. **Construction.** Words used in the Agreement of any gender or neuter shall be construed to include any other gender or neuter where appropriate. Words used in this Agreement that are either singular or plural shall be construed to include the other where appropriate. This Agreement shall be construed in the broadest fashion possible so as to fulfill the expressed intention of the Parties, which is to fully and finally resolve all claims or disputes, of whatever nature, existing between them as of the effective date.

11. **Captions and Headings.** The Parties agree that the captions and headings contained in this Agreement are for convenience only and shall not be deemed to constitute a part of this Agreement.

12. **Multiple Counterparts.** This Agreement may be executed in multiple counterparts, any and all of which may contain the signatures of less than all the Parties and all of which shall be construed together as a single document. Each counterpart shall be fully effective as an original when all of the Parties have executed this Agreement. Such counterparts may also be executed by facsimile or electronic signature.

13. **No Waiver.** The failure by any of the Parties to this Agreement to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement or a course of dealing between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

14. **Binding Agreement.** This Agreement shall be binding upon the Parties hereto and each of their respective successors, legal representatives, and assigns upon execution as to the terms stated herein, but performance hereunder will be excused and none of the Parties will have any right to enforce this Agreement until the Bankruptcy Court enters an order approving the Cointerra Trustee entering into this Agreement.

| Randolph N. Osherow, Chapter 7 Trustee for Cointerra, Inc.<br><br>_____<br>Randolph Osherow, Trustee | Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement<br><br>By: _/s/ Rick Fink_____<br>Rick Fink, Managing Director |
|---|---|
| C7 Data Centers, Inc.<br><br>By: _/s/ Weston Swenson_____<br>Weston Swenson,, CEO | Open-Silicon, Inc.<br><br>By: _____<br>Jay Vyas, Sr. VP and CFO |

80820042.2